1

```
 1

 2

 3

 4                UNITED STATES DISTRICT COURT

 5               CENTRAL DISTRICT OF CALIFORNIA

 6                     SOUTHERN DIVISION

 7        THE HONORABLE CORMAC J. CARNEY, JUDGE PRESIDING

 8                                   CERTIFIED TRANSCRIPT

 9     UNITED STATES OF AMERICA,    )
                         Plaintiff, }
10          vs.                     }
                                    }   SACR-10-70-CJC
11     HARSHAD SHAH,                )
                         Defendant. }   VOLUME III
12     ---------------------------}

13

14            REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                  Santa Ana, California

16                    July 17, 2015

17

18                    SHARON A. SEFFENS, RPR
                      United States Courthouse
19                    411 West 4th Street, Suite 1-1053
                      Santa Ana, CA  92701
20                    (714) 543-0870

21

22

23

24

25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
 1   APPEARANCES OF COUNSEL:

 2   EILEEN M. DECKER
     United States Attorney
 3   DENNISE D. WILLETT
     Assistant United States Attorney
 4   Chief, Santa Ana Branch Office
     JENNIFER L. WAIER
 5   Assistant United States Attorney
     8000 United States Courthouse
 6   411 West Fourth Street
     Santa Ana, CA  92701
 7   (714) 338-3500

 8   For the Defendant:

 9   MICHAEL M. SEVERO
     THE SEVERO LAW FIRM
10   70 South Lake Avenue, Suite 945
     Pasadena, CA  91101
11   (626) 844-6400

12   DANIEL W. LAYTON
     WILSON TAX LAW GROUP, APLC
13   10832 Lemon Drive, Suite C609
     Yorba Linda, CA  92886
14   (714) 463-4430

15   JOSEPH P. WILSON
     WILSON TAX LAW GROUP, APLC
16   18032 Lemon Drive, Suite C609
     Yorba Linda, CA  92886
17   (714) 463-4430

18

19

20

21

22

23

24

25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

1
2                            I–N–D–E–X
3                                                          PAGE
4     JURY NOTE NO. 1                                        4
      JURY NOTE NO. 2                                       12
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

4

| | | |
|---|---|---|
| | 1 | SANTA ANA, CALIFORNIA; FRIDAY, JULY 17, 2015; 3:42 P.M. |
| 03:40 | 2 | (Jury not present.) |
| 03:42 | 3 | THE COURT:  All right, we have got a question. |
| 03:43 | 4 | Did both sides receive a copy of my proposed |
| 03:43 | 5 | response? |
| 03:43 | 6 | MS. WAIER:  Yes. |
| 03:43 | 7 | MR. SEVERO:  Yes. |
| 03:43 | 8 | THE COURT:  Is it acceptable? |
| 03:43 | 9 | MS. WAIER:  Yes. |
| 03:43 | 10 | MR. SEVERO:  Yes. |
| 03:43 | 11 | THE COURT:  Okay.  Then I just have a few |
| 03:43 | 12 | questions, logistics.  How long will it take to get it? |
| 03:43 | 13 | MS. WAIER:  We're ready. |
| 03:43 | 14 | THE COURT:  We're ready.  And then what I suggest |
| 03:43 | 15 | is let me direct who is going to be manning it. |
| 03:43 | 16 | Okay.  And I will just direct you to push the |
| 03:43 | 17 | button and play.  Any objections to that? |
| 03:43 | 18 | MR. SEVERO:  No, none at all. |
| 03:43 | 19 | MS. WAIER:  What about the transcript books? |
| 03:43 | 20 | THE COURT:  That was my next question.  Do the |
| 03:43 | 21 | parties agree that the jurors should be provided the |
| 03:43 | 22 | transcript books as that's being played or not? |
| 03:43 | 23 | MS. WAIER:  Yes, Your Honor. |
| 03:43 | 24 | MR. SEVERO:  I believe the transcripts are |
| 03:43 | 25 | accurate, so yes. |

03:43   1            THE COURT:  Okay, then another question.

03:43   2            Melissa, are the alternates still in the

03:44   3   courthouse?

03:44   4            MR. SEVERO:  Yes.

03:44   5            MS. WAIER:  They're in the hallway.

03:44   6            THE COURT:  Do you want them excluded from this or

03:44   7   do you want them to sit in the audience and hear it or sit

03:44   8   in the jury box and hear it in the event we need one of

03:44   9   them?

03:44   10           MR. SEVERO:  Since they're not in the

03:44   11   deliberations, this doesn't -- if one of them had to come in

03:44   12   as an alternate, they would have to start deliberations all

03:44   13   over again, so I don't believe that they need to be here.

03:44   14   This is part of deliberations.

03:44   15           THE COURT:  Right.  So you would like them

03:44   16   excluded?

03:44   17           MR. SEVERO:  Yes.

03:44   18           THE COURT:  Then they will be excluded.

03:44   19           I believe that's all I have.

03:44   20           MR. SEVERO:  It's an hour and 39 minutes.

03:44   21           MS. WAIER:  Yes.

03:44   22           THE COURT:  And I'm glad you raised that.  I

03:44   23   didn't know if that's where you were going.  I view this to

03:44   24   readbacks of testimony, and the Ninth Circuit has made

03:44   25   clear -- and I can give you the decision if you don't

03:45    1    already know of it -- that I can't tell them:  Let me know

03:45    2    when you've heard enough.

03:45    3         But if the foreperson speaks up and says we have

03:45    4    heard enough, my intention would be to say okay.

03:45    5         MR. SEVERO:  Would it be prudent to ask at the

03:45    6    outset of they want to hear the whole thing or particular

03:45    7    parts?  Actually I would want --

03:45    8         THE COURT:  Your preference.

03:45    9         MR. SEVERO:  I would want them to hear the whole

03:45    10    thing.

03:45    11         THE COURT:  Okay.  It would be inappropriate for

03:45    12    me to do that unless that's what you wanted me to do.  So if

03:45    13    you don't want me to do it, I won't do it.

03:45    14         MR. SEVERO:  May I have a moment?

03:45    15         THE COURT:  Sure.

03:46    16         (Defense counsel conferring)

03:46    17         MR. SEVERO:  Well, perhaps what we could do is

03:47    18    find out if they want to hear the entire recording.  Let me

03:47    19    think here.  They didn't say they were looking for a

03:47    20    specific area of the recording.  They just want to hear the

03:47    21    whole thing, it looks like.

03:47    22         THE COURT:  The jury would like to review the

03:47    23    recordings of the January 8th, 2010, meeting.

03:47    24         MR. SEVERO:  I think the idea is that maybe they

03:47    25    don't know how long it is.  They may not want to be here

7

03:47  1    that late.  Maybe they're looking for a specific area.  Let

03:47  2    me put it this way.  If they only want to hear the last

03:47  3    part, I would object to that.  I would want them to hear the

03:47  4    whole thing.

03:48  5         THE COURT:  I guess my response is I say nothing

03:48  6    and the foreperson says:  We have heard enough.  And then I

03:48  7    ask the other jurors:  Have you heard enough? and they say

03:48  8    yes, then I cut it off.

03:48  9         MR. SEVERO:  That is the proper procedure, so --

03:48  10        THE COURT:  But I think I get myself into trouble

03:48  11   if I tell them or suggest to them that they only hear

03:48  12   certain parts.

03:48  13        MR. SEVERO:  Okay.

03:48  14        THE COURT:  So it's hard for me to respond to your

03:48  15   -- you want them to hear the whole thing, particularly the

03:48  16   beginning, as opposed to fast forward and just hear the end;

03:48  17   correct?

03:48  18        MR. SEVERO:  Yes.  It's the context obviously.

03:49  19        THE COURT:  Right.  But I think you make a good

03:49  20   point that we need to talk about should I tell them in this

03:49  21   response that the recording is an hour and 28 minutes or

03:49  22   not.  I don't feel comfortable telling them that unless you

03:49  23   would like me to do that and the government doesn't object.

03:49  24        If the government objects, then I think I say

03:49  25   nothing.  But if you both, particularly the defense, want me

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 03:49 | 1 | to indicate to them how long the recording is, I certainly |
| 03:49 | 2 | will consider it. |
| 03:49 | 3 | MR. SEVERO:  I would ask that that be done as long |
| 03:49 | 4 | as it is not deemed a waiver of my request that the whole |
| 03:50 | 5 | thing be heard. |
| 03:50 | 6 | THE COURT:  I'm not sure I understand. |
| 03:50 | 7 | MR. SEVERO:  Right.  By saying an hour and 28 |
| 03:50 | 8 | minutes, and they say, well, then, we only want to hear a |
| 03:50 | 9 | portion -- |
| 03:50 | 10 | THE COURT:  Then I've to do it. |
| 03:50 | 11 | MR. SEVERO:  Yeah.  Well, let's just play it and |
| 03:50 | 12 | see what happens. |
| 03:50 | 13 | THE COURT:  I think that's probably the safer |
| 03:50 | 14 | course. |
| 03:50 | 15 | MR. SEVERO:  I agree. |
| 03:50 | 16 | THE COURT:  Melissa, do you have my response, |
| 03:50 | 17 | then?  Could you give it to Bobby, and Bobby will deliver it |
| 03:50 | 18 | to the jurors.  And as I understand, we're ready to go.  I |
| 03:50 | 19 | guess just give them a minute to read that, Bobby, and then |
| 03:50 | 20 | tell them we're ready. |
| 03:50 | 21 | Ms. Waier, what is your fine intern's name? |
| 03:50 | 22 | MS. WAIER:  Taylor Parks. |
| 03:51 | 23 | THE COURT:  I'm going to ask you, Mr. Parks, to |
| 03:51 | 24 | play the recording as opposed to Ms. Waier doing it. |
| 03:52 | 25 | Counsel, I'm going to give them the instruction |

| | |
|---|---|
| 03:52 | 1 |

again.  Hopefully there is no objection to that, that transcripts are not evidence.

MR. SEVERO:  That's acceptable.

(Jury present)

THE COURT:  Please be seated, ladies and gentlemen.

Ms. M.C., I understand that the jury would like to hear the recording of the January 8th, 2010, meeting; is that correct?

JURY FOREPERSON:  Yes.

THE COURT:  Okay.  I'm going to have that recording played.  Before I do, I have to give you Instruction No. 11 again just to make sure that you're all aware of it.

You will be hearing recordings of this meeting, and the recording was received in evidence.  A transcript of this recording is going to be provided to you to help you identify the speakers and to help you decide what the speakers said.  Remember that the recording is the evidence, not the transcripts.  If you hear something different from what appears in the transcript, what you hear is controlling.

All right, Mr. Parks, please don't play it yet. We need to pass out the binders with the transcript.

(Pause in proceedings)

03:54   1          THE COURT:  All right, it seems everybody has the

03:54   2   transcripts.

03:55   3          Now, Mr. Parks, will you start playing the

03:55   4   recording.

03:55   5          (Audiotape recording played)

04:24   6          THE COURT:  That's it, ladies and gentlemen of the

04:24   7   jury.

04:24   8          (Jury out to resume deliberations.)

04:24   9          MS. WAIER:  Your Honor, for the record I took out

04:25  10   the drive time of driving there and driving back, which is

04:25  11   why it was shorter than what the original tape was.

04:25  12          MR. SEVERO:  Well, my concern is were there any

04:25  13   conversations between Mr. Gomez and Mr. Ham during the drive

04:26  14   over and the drive back that perhaps should have been

04:26  15   available in discovery.

04:26  16          MS. WAIER:  You have the full tape in discovery.

04:26  17          MR. SEVERO:  It was taken out of the transcript?

04:26  18          MS. WAIER:  Right.  I took out a lot of the space

04:26  19   even on the video stuff because there was a lot of driving

04:26  20   between Staples and everything else, but you have the full

04:26  21   video and audios.

04:26  22          THE COURT:  Okay, from where I am sitting, the

04:26  23   fact of the matter is what was played to the jury was what

04:26  24   they heard during the trial.

04:26  25          MR. SEVERO:  That's correct.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

04:26  1          THE COURT:  And the transcript was what they read

04:26  2    and followed along during the trial.  So I couldn't give

04:26  3    them anything different than what was given during the

04:26  4    trial.

04:26  5          MR. SEVERO:  No question about that.  I

04:26  6    understand.

04:26  7          THE COURT:  Okay.

04:26  8          MR. SEVERO:  Thank you.

04:26  9          THE COURT:  All right.

04:26  10         So I was just talking to Bobby.  I told him not to

04:26  11   to say anything to the jury.  They kind of know what our

04:27  12   hours of operation are.  I'm hoping that if they're not able

04:27  13   to reach a verdict soon that they quit before 5:00, but I'm

04:27  14   not going to put pressure on them one way or the other.

04:27  15   They can let me know when they're ready to quit for the day,

04:27  16   and then I will have them come back at 8:30 Monday morning.

04:27  17         MR. SEVERO:  So they have not been told that

04:27  18   deliberation times are 8:30 to 5:00 or anything like that?

04:27  19         THE COURT:  I haven't told them.  I mean, if they

04:27  20   told me they think they can reach a verdict today,

04:27  21   hypothetically, if we gave them til 6:00, I probably would

04:27  22   stay til 6:00.

04:27  23         MR. SEVERO:  Oh, of course.  Yes.

04:27  24         THE COURT:  So I'm not saying anything.

04:27  25         MR. SEVERO:  That's fine.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

04:27  1                    THE COURT:  Okay.

04:27  2                    MR. SEVERO:  Thank you.  We'll be here.

04:27  3                    THE COURT:  All right.

04:27  4                    (Recess.)

04:44  5                    (Bailiff sworn.)

04:44  6                    THE CLERK:  Please state your name for the record

04:44  7      and spell your last name.

04:44  8                    THE BAILIFF:  Michael Jung, J-u-n-g.

04:44  9                    THE CLERK:  Thank you.

04:45  10                   (Recess.)

05:28  11                   THE COURT:  All right, has Melissa given you the

05:28  12     latest note I got, No. 2?

05:28  13                   MS. WAIER:  Yes.

05:28  14                   MR. SEVERO:  Yes.

05:29  15                   THE COURT:  Here is what I propose, but I do want

05:29  16     to hear your thoughts and comments.  I am inclined to have

05:29  17     the jury come out and then I make an inquiry with the

05:29  18     foreperson first and I ask her is there anything that the

05:29  19     Court can do to assist in the jury's deliberations.

05:29  20                   If she says no, then I will ask her would

05:29  21     additional instruction assist.

05:29  22                   If she says no, I will ask her would rereading of

05:29  23     any witness's testimony assist.

05:29  24                   If she says no, I will ask in her opinion is the

05:29  25     jury hopelessly deadlocked.  If she says yes, then I will

05:29  1  ask her if there's a reasonable probability that a unanimous

05:29  2  verdict can be reached if the jury is sent back for further

05:29  3  deliberations.

05:29  4        If she says no, then I will individually poll the

05:30  5  remaining 11 jurors on that same question.  And if they all

05:30  6  say no, then will declare a mistrial.

05:30  7        If the answer is yes to any of the questions about

05:30  8  additional instruction, rereading of the witness testimony,

05:30  9  further instruction, I will then obviously let them go home

05:30  10 and then get them back here on Monday.

05:30  11       Any comments, suggestions, criticisms?

05:30  12       MR. SEVERO:  No.  I think that's acceptable.

05:30  13       MS. WAIER:  Will we be able to know what the split

05:30  14 was?

05:30  15       THE COURT:  Ninth Circuit law is clear that I

05:30  16 cannot ask them about the split, contrary to state practice,

05:30  17 unless they tell me they are hopelessly deadlocked and I

05:30  18 have declared a mistrial.  Once I have declared a mistrial,

05:31  19 I will obviously ask them that question.

05:31  20       Okay, would you bring the jury out.

05:31  21       (Jury present)

05:32  22       THE COURT:  All right, please be seated.  I know

05:32  23 it's late in the day.  We all greatly appreciate your

05:32  24 service on this case.

05:32  25       Ms. M.C., I am going to be asking you a few

05:32  1    questions.  Before I ask those questions, I just want to

05:32  2    give you a context.  What happens and what is discussed in

05:32  3    the jury room is sacred.  Neither the parties nor I can

05:32  4    really know what's being discussed.  So we have to act

05:32  5    pretty carefully and formally in our questions and answers.

05:32  6              I'm going to be asking you general questions that

05:33  7    I think you can answer with a yes or a no.  If you can't

05:33  8    answer with a yes or no, just let me know that.  And if I

05:33  9    want an explanation, I will try to ask for the explanation,

05:33  10   and then you try to answer it as precisely as you can.

05:33  11             JURY FOREPERSON:  Okay.

05:33  12             THE COURT:  So my first question is we got the

05:33  13   note that the jury was unable to come to a unanimous

05:33  14   decision, and I want to ask you:  Is there anything that the

05:33  15   Court can do to assist in the jury's deliberations?

05:33  16             JURY FOREPERSON:  No.

05:33  17             THE COURT:  Would additional instruction assist?

05:33  18             JURY FOREPERSON:  No.

05:33  19             THE COURT:  Would rereading of witness testimony

05:33  20   assist?

05:33  21             JURY FOREPERSON:  No.

05:33  22             THE COURT:  In your opinion is the jury hopelessly

05:34  23   deadlocked?

05:34  24             JURY FOREPERSON:  Yes.

05:34  25             THE COURT:  Do you feel there is a reasonable

05:34   1    probability that a unanimous verdict can be reached if the

05:34   2    jury is sent back for further deliberations?

05:34   3                JURY FOREPERSON:  No.

05:34   4                THE COURT:  Very well.

05:34   5           Now I am going to need to ask that last question

05:34   6    to the remaining jurors, and if you could just answer that

05:34   7    yes or no.  And then if I want an explanation, I will ask

05:34   8    for it.  Okay?

05:34   9           I will start with Ms. D. L. first.  Do you feel

05:34   10   there is a reasonable probability that a unanimous verdict

05:34   11   can be reached if the jury is sent back for further

05:34   12   deliberation?

05:34   13               JUROR NO. 1:  No.

05:34   14               THE COURT:  Ms. M.C., Foreperson, I have already

05:34   15   spoken to you.

05:34   16               JUROR NO. 2:  Yes.

05:34   17               THE COURT:  Ms. L.N., do you feel there is a

05:34   18   reasonable probability that a unanimous verdict can be

05:34   19   received if the jury is sent back for further deliberation?

05:34   20               JUROR NO. 3:  No.

05:34   21               THE COURT:  Mr. S.V., do you feel there is a

05:34   22   reasonable probability that an unanimous verdict can be

05:34   23   reached if the jury is sent back for further deliberation?

05:35   24               JUROR NO. 4:  No.

05:35   25               THE COURT:  Ms. L.B., do you feel there is a

05:35   1   reasonable probability that a unanimous verdict can be

05:35   2   reached if the jury is sent back for further deliberation?

05:35   3           JUROR NO. 5:  No.

05:35   4           THE COURT:  Mr. C.V., do you feel there is a

05:35   5   reasonable probability that a unanimous verdict can be

05:35   6   reached if the jury is sent back for further deliberations?

05:35   7           JUROR NO. 6:  No.

05:35   8           THE COURT:  Ms. L.L., do you feel there is a

05:35   9   reasonable probability that a unanimous verdict can be

05:35   10  reached if the jury is sent back for further deliberations?

05:35   11          JUROR NO. 7:  No.

05:35   12          THE COURT:  Ms. L.R., do you feel there is a

05:35   13  reasonable probability that a unanimous verdict can be

05:35   14  reached if the jury is sent back for further deliberations?

05:35   15          JUROR NO. 8:  No.

05:35   16          THE COURT:  Mr. D.D., do you feel there is a

05:35   17  reasonable probability that a unanimous verdict can be

05:35   18  reached if the jury is sent back for further deliberations?

05:35   19          JUROR NO. 9:  No, sir.

05:36   20          THE COURT:  Mr. A.Z., do you feel there is a

05:36   21  reasonable probability that a unanimous verdict can be

05:36   22  reached if the jury is sent back for further deliberations?

05:36   23          JUROR NO. 10:  No.

05:36   24          THE COURT:  Mr. M.D., do you feel there is a

05:36   25  reasonable probability that a unanimous verdict can be

```
05:36   1   reached if the jury is sent back for further deliberations?
05:36   2            JUROR NO. 11:  No.
05:36   3            THE COURT:  And finally, Mr. G.E., do you feel
05:36   4   there is a reasonable probability that a unanimous verdict
05:36   5   can be reached if the jury is sent back for further
05:36   6   deliberation?
05:36   7            JUROR NO. 12:  No.
05:36   8            THE COURT:  All right, does either side want to be
05:36   9   heard on declaring a mistrial?
05:36  10            MS. WAIER:  No, Your Honor.
05:36  11            MR. SEVERO:  Your Honor, there is a Rule 29
05:36  12   pending.
05:36  13            THE COURT:  We can't deal with that post-trial?
05:36  14            MR. SEVERO:  I think once you have declared a
05:36  15   mistrial, you can't.  Other than that, if the Court -- I
05:37  16   have not been in this position.  I believe that once you
05:37  17   declare a mistrial, you lose jurisdiction over the case at
05:37  18   this point.
05:37  19            THE COURT:  I'm not sure I lose jurisdiction over
05:37  20   the case because I have to --
05:37  21            MR. SEVERO:  It has to be re-arraigned.
05:37  22            THE COURT:  Right.
05:37  23            MR. SEVERO:  So it could be done after
05:37  24   arraignment?  Okay.
05:37  25            THE COURT:  Would you like to be further heard?
```

05:37  1          MR. SEVERO:  No.

05:37  2          THE COURT:  Ms. Waier, do you want to be further

05:37  3  heard on that point?

05:37  4          MS. WAIER:  No, Your Honor.

05:37  5          THE COURT:  Okay.  Then based on the jurors'

05:37  6  answers to my question, it appears to the Court that the

05:37  7  jury is hopelessly deadlocked, and I now declare a mistrial

05:37  8  and discharge the jury from any further service in this

05:37  9  case.

05:37  10          Ms. M.C., I do want to ask you now since I have

05:37  11  declared a mistrial -- can you tell me what the vote was on

05:38  12  the charge?  What was the split?  There's 12.

05:38  13          JURY FOREPERSON:  Eleven to one.

05:38  14          THE COURT:  Eleven to one.  Was it 11 for guilty

05:38  15  or not guilty?

05:38  16          JURY FOREPERSON:  Eleven for guilty and one for

05:38  17  not guilty.

05:38  18          THE COURT:  Okay, I want to thank you all very

05:38  19  much for your service on this case.  I meant what I said at

05:38  20  the beginning.  I think we have a great system, and why it

05:38  21  is so great is that people from different backgrounds

05:38  22  determine whether the government has met its burden of

05:38  23  proof.

05:38  24          I hope it wasn't a frustrating process for you.

05:38  25  These situations do come up, and it came up in this case.  I

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

05:38  1   wish you all the best.  I don't know whether the lawyers are
05:38  2   going to want to talk to you and get your thoughts.  You are
05:39  3   free to talk to them if you want.  If you don't want to talk
05:39  4   to them, you don't have to talk to them and you should let
05:39  5   them know that.
05:39  6           All those admonitions I gave you, you are now
05:39  7   released from them and you're hereby discharged.  Thank you.
05:39  8           (Jury excused)
05:39  9           THE COURT:  Well, I know everybody must be tired
05:39  10  and frustrated on both sides, but why don't we just take a
05:39  11  deep breath and then just take a few minutes and decide
05:40  12  exactly where we are going to go from here.
05:40  13          You do have a post-trial -- even though there was
05:40  14  a mistrial, you do have a motion pending.  I don't believe I
05:40  15  have lost jurisdiction over that motion.
05:40  16          MR. SEVERO:  I'm just concerned that once there is
05:40  17  a mistrial, there are no proceedings pending any longer.
05:40  18  That's why I thought that you had to rule on this before.
05:40  19  But frankly I don't have it at my fingertips right now.
05:40  20          THE COURT:  I appreciate that.  The reason where
05:40  21  that doesn't make immediate sense to me is when there is a
05:40  22  mistrial, I have to reschedule a new trial.  So I haven't
05:40  23  lost jurisdiction over the case.
05:40  24          MS. WAIER:  We don't reindict.  We just set a new
05:40  25  trial.

05:40    1          MR. SEVERO:  That's true.  We can do that as a
05:40    2    pretrial motion at some point.
05:40    3          THE COURT:  Yeah.  But I think that is probably
05:41    4    the first order of business.  In just putting it out on the
05:41    5    table, I don't know whether Dr. Shah wants to waive time
05:41    6    because I think technically I have to reschedule the trial
05:41    7    immediately.
05:41    8          MS. WAIER:  Yes.  I would like to reschedule the
05:41    9    trial immediately.
05:41   10          MR. SEVERO:  I don't know what immediately is, but
05:41   11    I'm not in a position to reschedule a trial next week or
05:41   12    even next month.  He will waive time obviously.
05:41   13          THE COURT:  And I assume you need time for the
05:41   14    post-trial motion.
05:41   15          MR. SEVERO:  And we have to find out what our
05:41   16    witness situation is, too.
05:41   17          THE COURT:  Right.  What I propose, then, is we
05:41   18    will take just a brief time waiver now.  We will set a
05:41   19    status conference here shortly, and then you can get with
05:42   20    Ms. Waier and see if you can agree on a time frame for a new
05:42   21    trial as well as for this motion.  Candidly my preference
05:42   22    for the motion is to citations to the record and then what
05:42   23    we heard, and that's going to take a little time to get it,
05:42   24    number one.
05:42   25          Number two -- and I think I told you this -- my

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

05:42   1    trial schedule is really bad.  So if the parties are adamant

05:42   2    about moving forward, I'm going to probably have to refer

05:42   3    this to Judge Real in Los Angeles.

05:42   4              MS. WAIER:  I'm fine with that, Your Honor, if we

05:42   5    have to go to a new judge.  I think that this needs to get

05:42   6    retried.  This case has been going on forever.  We've had

05:42   7    issues with the defendant in terms of having to delay the

05:42   8    trial, and I think that this needs to go forward.  So if you

05:43   9    think a new judge is appropriate, then I think that we need

05:43   10   to go on.  This was 11 to one.  We need to move forward.

05:43   11             MR. SEVERO:  I think that's maybe the frustrations

05:43   12   coming out, but I don't believe that there is any need at

05:43   13   all for us to go to another judge when the Court has full

05:43   14   command of the case and we should do it here.

05:43   15             Now, would I want to go to L.A.?  Of course I

05:43   16   would want to go to L.A.  We wouldn't have to drive an hour

05:43   17   and a half over and back.  But I think it needs to stay

05:43   18   here, and the defendant has no problems waiving time to an

05:43   19   appropriate date.

05:43   20             THE COURT:  Okay.  Well, when can the defense -- I

05:43   21   know Ms. Waier will get here whenever I can get her here --

05:43   22   first available time.

05:43   23             MS. WAIER:  Right.

05:43   24             THE COURT:  When can you get here just for the

05:43   25   status conference?  I will take the time waiver just until

05:43  1    the status conference.

05:44  2              MR. SEVERO:  Any day of the week, sir?

05:44  3              THE COURT:  Any day of the week, but I guess it

05:44  4    will somewhat depend on how quickly -- I don't know if this

05:44  5    helps.  There is no way I am going to be able to get you in

05:44  6    if I am the judge until the end of the year.

05:44  7              MS. WAIER:  I know you have a huge trial calendar.

05:44  8    I have an insider trading case going in November.

05:44  9              THE COURT:  What do you want me to do?

05:44  10             MS. WAIER:  Your Honor, I'm sorry.  It's been a

05:44  11   long day and I'm sorry.  We're all frustrated, but this case

05:44  12   is so old.  I know you're doing everything.  I know.  I

05:44  13   know.

05:44  14             MR. SEVERO:  You tried it.  This is our first --

05:44  15   we're going to go with the first dance.  We tried and it

05:45  16   didn't work.  We have to do it again.

05:45  17             THE COURT:  My trial schedule is packed, but that

05:45  18   cannot be a grounds for a continuance.  If Dr. Shah wants an

05:45  19   early trial, what I am saying is I will make the necessary

05:45  20   arrangements for him because my schedule is not grounds to

05:45  21   waive time.  That's what I am saying.

05:45  22             MR. SEVERO:  I am certain that that doesn't come

05:45  23   as a shock.  We will waive time until the Court can

05:45  24   accommodate us.

05:45  25             THE COURT:  Okay.  So what I need to know, then,

05:45  1    is when can you have a status conference to then reset the

05:45  2    new trial date, set a briefing and hearing schedule on your

05:45  3    motion?

05:45  4            MR. SEVERO:  Could we do the 31st?  It's a Friday.

05:46  5            THE COURT:  The 31st of July.  If we do it, it's

05:46  6    going to have to be after hours because I'm starting the --

05:46  7            MR. SEVERO:  What's convenient for the Court at

05:46  8    this point?  The only time -- let me just say I am finally

05:46  9    able to schedule a vacation, given all the issues with

05:46  10   personal and trials and whatnot between August 13th and -- I

05:46  11   think I come back on the 21st.  So after that date or before

05:46  12   that date, whatever the Court can accommodate, that's fine.

05:46  13           THE COURT:  I'm sorry.  You said before that date

05:46  14   or after that?

05:47  15           MR. SEVERO:  It could be before the 13th of

05:47  16   August -- like I said, July 31st or in August until we leave

05:47  17   on the 13th, or after August 21.

05:47  18           THE COURT:  Melissa, what's our calendar look like

05:47  19   August 10th?

05:47  20           THE CLERK:  Morning would be available.

05:47  21           THE COURT:  Any specific time?

05:47  22           THE CLERK:  Ten or 11.

05:47  23           THE COURT:  Why don't we do it at 11:00 on

05:47  24   August 10th.

05:47  25           MR. SEVERO:  Perfect.

05:47  1          THE COURT:  We'll have a status conference.  I
05:47  2     assume the defense will get the transcripts.  Let's not
05:47  3     waste any time on the motion.
05:48  4          MR. SEVERO:  We have got, like, four court
05:48  5     reporters on this.
05:48  6          THE COURT:  Yeah.
05:48  7          MR. SEVERO:  I'll start that process.
05:48  8          THE COURT:  Okay.  I'm just going to take a time
05:48  9     waiver from Dr. Shah.  Please interject if you feel I have
05:48  10    crossed the ground.  And then we need to talk about his bail
05:48  11    conditions.
05:48  12          Dr. Shah, hopefully you have followed our
05:48  13    discussion, but, sir, you do have the right, speedy trial
05:48  14    rights, and technically to the immediate scheduling of a new
05:48  15    trial.  Mr. Severo, your counsel, has indicated that he
05:48  16    would like some more time, given his other commitments he
05:48  17    has as well as to adequately brief the motion that was filed
05:48  18    during the trial which I still haven't ruled on.
05:48  19          Are you okay with us not setting your new trial
05:49  20    date until we get back together on August 10, 2015, at 11:00
05:49  21    a.m.?
05:49  22          THE DEFENDANT:  Yes, sir.
05:49  23          THE COURT:  All right.
05:49  24          Counsel, do you join in that continuance?
05:49  25          MR. SEVERO:  I do.

05:49 1    THE COURT:  So we will get back together

05:49 2 August 10th, 2015, at 11:00 a.m.

05:49 3    Now, I did put Dr. Shah on home confinement.  My

05:49 4 inclination now is to put him back to the regular conditions

05:49 5 of bail.  But, Dr. Shah, I need strict compliance and I need

05:49 6 strict honesty and candor with the Pretrial Services

05:49 7 officer.  Do you understand, sir?

05:49 8    THE DEFENDANT:  Yes, sir.

05:49 9    THE COURT:  I'm not trying to threaten you, but if

05:50 10 there is another violation, I am going to take you into

05:50 11 custody, and I am not going to leave you out on bail.  Do

05:50 12 you understand?

05:50 13    THE DEFENDANT:  Yes, sir.

05:50 14    THE COURT:  All right.

05:50 15    THE DEFENDANT:  This will be the same conditions

05:50 16 that I was in before; correct?

05:50 17    THE COURT:  Yes, it will be, all those conditions.

05:50 18    Mr. Severo, if you would be kind enough to

05:50 19 communicate with the Pretrial Services officer, and I know

05:50 20 Melissa will as well, to let her know the Court's new order

05:50 21 going back to the original terms and conditions of bond.

05:50 22    MR. SEVERO:  He is wearing a bracelet right now,

05:50 23 an ankle bracelet.  I don't know if there is anyone from

05:50 24 Pretrial to take it off.

05:50 25    THE COURT:  I'm afraid not.

| | | |
|---|---|---|
| 05:50 | 1 | MR. SEVERO:  He'll wait until Monday, then. |
| 05:50 | 2 | THE COURT:  You have to wait until Monday. |
| 05:50 | 3 | THE DEFENDANT:  Monday morning I can come and take |
| 05:50 | 4 | it off? |
| 05:50 | 5 | THE COURT:  That is correct, sir. |
| 05:50 | 6 | THE DEFENDANT:  Thank you, sir. |
| 05:50 | 7 | THE COURT:  Okay. |
| 05:50 | 8 | THE DEFENDANT:  Thank you for everything.  I don't |
| 05:50 | 9 | intend to violate anything. |
| 05:50 | 10 | THE COURT:  Okay. |
| 05:50 | 11 | Is there anything further we need to discuss? |
| 05:51 | 12 | MR. SEVERO:  No, Your Honor. |
| 05:51 | 13 | MS. WAIER:  No, Your Honor.  Thank you. |
| 05:51 | 14 | (Proceedings concluded at 5:51 p.m.) |
| 05:51 | 15 | *     *     * |
| 05:51 | 16 | |
| 05:51 | 17 | |
| 05:51 | 18 | |
| 05:51 | 19 | |
| 05:51 | 20 | |
| 05:51 | 21 | |
| 05:51 | 22 | |
| 05:51 | 23 | |
| 05:51 | 24 | |
| 05:51 | 25 | |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
05:51   1
05:51   2
05:51   3
05:51   4
05:51   5                        CERTIFICATE
05:51   6
05:51   7        I hereby certify that pursuant to Section 753,
05:51   8   Title 28, United States Code, the foregoing is a true and
05:51   9   correct transcript of the stenographically reported
05:51  10   proceedings held in the above-entitled matter and that the
05:51  11   transcript page format is in conformance with the
05:51  12   regulations of the Judicial Conference of the United States.
05:51  13
05:51  14   Date:  August 16, 2015
05:51  15
05:51  16
05:51              /s/   Sharon A. Seffens  8/16/15
05:51  17           _____
05:51              SHARON A. SEFFENS, U.S. COURT REPORTER
05:51  18
05:51  19
05:51  20
05:51  21
       22
       23
       24
       25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER